VORYS, SATER, SEYMOUR AND PEASE LLP
Jeahyun Ahn (SBN 357990)
jahn@vorys.com
Adam C. Sherman (SBN 224979)
acsherman@vorys.com
2211 Michelson Drive, Suite 500
Irvine, CA 92612
Telephone: (949) 531-4492
Facsimile: (949) 531-4492

Attorneys for Plaintiff
ZO Skin Health, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ZO SKIN HEALTH, INC. a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SKINCARE ESSENTIALS INC, a corporation, YISROEL ZAHLER, a natural person, and JOHN DOES 1-10,<br><br>Defendants. | Case No.   2:25-cv-06451<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF, FOR VIOLATION OF 15 USC § 1114; 15 USC § 1125(a); 15 USC § 1125(c); AND RELATED CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, ZO Skin Health, Inc. ("ZO"), brings this action against defendants Skincare Essentials Inc, Yisroel Zahler, and John Does 1-10 (collectively, "Defendants") for: (1) trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114; (2) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a); (3) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) unfair competition in violation of the

Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (5) unfair competition in violation of Cal Bus. and Prof. Code § 17200; and (6) intentional interference with contractual relations.  These claims arise from Defendants' interference with ZO's contracts and business relationships with its authorized sellers by diverting ZO products for online resale, Defendants' unauthorized sales of products bearing ZO's trademarks, and Defendants' sales of counterfeit versions of ZO products.   In support of its complaint, ZO alleges as follows:

## **PARTIES**

1.     ZO is a corporation, organized under the laws of the State of California, with its principal place of business located in Irvine, California.

2.     Skincare Essentials Inc ("Skincare Essentials") is a corporation, organized under the laws of New York.  Skincare Essentials operates or assists in the operation of a private website called "Skincare Essentials," located at www.skincareessentials.com (the "Consumer Website").  Skincare Essentials sells infringing products bearing ZO's trademarks and counterfeit reproductions of ZO's trademarks through the Consumer Website and does business throughout the United States through the Consumer Website, including in California.

3.     Skincare Essentials also operates or assists in the operation of a private website called "Plentiful Skin," located at www.plentifulskin.com (the "Wholesale Website"; together with the Consumer Website, the "Infringing Websites").  Skincare Essentials sells infringing products bearing ZO's trademarks and counterfeit reproductions of ZO's trademarks through the Wholesale Website and does business throughout the United States through the Wholesale Website, including in California.

4.     Yisroel Zahler ("Zahler") is a natural person who, upon information and belief, resides at 123 Tice Boulevard, Suite 302, Woodcliff Lake, NJ 07677 (the "Tice Blvd. Address").  Zahler operates or assists in the operation of the Infringing Websites, sells infringing products bearing ZO's trademarks and counterfeit

2

reproductions of ZO's trademarks through the Infringing Websites, and does business throughout the United States through the Infringing Websites including in California.

5.     The certificate of incorporation that was filed for Skincare Essentials identifies 15 Holt Drive, Stony Point, New York 10980 (the "Holt Drive Address") as the address for the Secretary of State to mail any process against Skincare Essentials, lists Zahler as the Chief Executive Officer of Skincare Essentials, and lists the Tice Blvd. Address as the principal executive office address.  Corporate documents filed for Skincare Essentials do not list any other individuals as officers for Skincare Essentials.

6.     ZO asserts claims against Zahler in both his individual capacity as well as his capacity as the sole officer of Skincare Essentials.  Upon information and belief, Zahler in his individual capacity and Skincare Essentials assist in and are responsible for the operation of and sales of products through the Infringing Websites.

7.     Alternatively, as the sole officer of Skincare Essentials, Zahler directs, controls, ratifies, participates in, or is the moving force behind the acquisition and sale of infringing products bearing ZO's trademarks and counterfeit reproductions of ZO's trademarks by Skincare Essentials.  Upon information and belief, Zahler personally participates in the acquisition and sale of infringing products by Skincare Essentials.  Accordingly, Zahler is personally liable for infringing activities carried out by Skincare Essentials without regard to piercing the corporate veil.

8.     Alternatively, on information and belief, Skincare Essentials follows so few corporate formalities and is so dominated by Zahler that it is merely the alter ego of Zahler.  Accordingly, ZO is entitled to pierce the corporate veil of Skincare Essentials and hold Zahler personally liable for the infringing activities of Skincare Essentials.

9.     ZO believes that other individuals or entities may be responsible for the

3

events and occurrences referred to herein or be otherwise interested in the outcome of the dispute. The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise of these individuals or entities are unknown to ZO. Therefore, ZO sues these defendants by the fictitious names John Does 1 through 10. When the true names, involvement, and capacities of these parties are ascertained, ZO will seek leave to amend this Complaint accordingly. If ZO does not identify any such parties, ZO will dismiss these defendants from this action.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367. ZO's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and their claims arising under the laws of the State of California are substantially related to their federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

11. This Court has personal jurisdiction over Defendants because they have expressly aimed tortious activities toward the State of California and established sufficient minimum contacts with California by, among other things, advertising and selling substantial quantities of infringing products bearing ZO's trademarks and counterfeit reproductions of ZO's trademarks to consumers within California through highly interactive commercial websites, with knowledge that ZO is located in California and is harmed in California as a result of Defendants' sales of infringing products to California residents. Defendants know that ZO is located in California, among other reasons, because ZO has informed Defendants of its location in cease-and-desist letters it sent to Defendants. ZO's claims arise out of Defendants' substantial and regular sales of infringing products bearing ZO's trademarks and counterfeit reproductions of ZO's trademarks to California residents.

12. Venue is properly found in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein

4

occurred within this judicial district, or in the alternative because a Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### ZO & Its Trademarks

13.    ZO is a leader in developing and selling high-end skin care products by utilizing cutting-edge science and extensive clinical experience under the ZO brand ("ZO products").

14.    ZO devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name, and reputation.  Each product is packaged in a manner in which the ZO brand is easily and readily identifiable.  Furthermore, each product is handled with the utmost care and precision during the packaging and transport process.  ZO ensures the safety, well-being, and satisfaction of consumers and maintains the integrity and reputation of the ZO brand.  In the highly competitive skin care market, quality is a fundamental part of the consumer's decision to purchase a product.

15.    To promote and protect the ZO brand, ZO has registered several trademarks with the United States Patent and Trademark Office with respect to its brand and products, including but not limited to: ZO® (U.S. Trademark Registration Nos. 3,443,712, and 4,688,942); ZO SKIN CENTRE® (U.S. Trademark Registration No. 4,786,332); ZPRO® (U.S. Trademark Registration No. 5,228,879); ZPOLY® (U.S. Trademark Registration No. 7,469,338); ZOX12® (U.S. Trademark Registration No. 5,418,681); ZO-RRS2® (U.S. Trademark Registration No. 5,433,835); ZO CONTROLLED DEPTH PEEL® (U.S. Trademark Registration Nos. 4,754,455, and 5,936,716); ZO 3-STEP PEEL® (U.S. Trademark Registration Nos. 5,936,718 and 4,750,572); ZEIN® (U.S. Trademark Registration No. 6,099,572); ZCORE® (U.S. Trademark Registration No. 6,078,475); TRIPLE-SPECTRUM PROTECTION® (U.S. Trademark Registration No. 5,899,342); SKIN HEALTH CIRCLE® (U.S. Trademark Registration No. 4,968,966); ROZATROL®

5

(U.S. Trademark Registration No. 5,413,502); REFISSA® (U.S. Trademark Registration No. 3,699,894); Ossential® (U.S. Trademark Registration No. 3,593,734); Oraser® (U.S. Trademark Registration No. 3,534,951); Ommerse® (U.S. Trademark Registration No. 3,544,801); Oclipse® (U.S. Trademark Registration No. 3,774,720); Olluminate® (U.S. Trademark Registration No. 3,534,953); Offects® (U.S. Trademark Registration No. 3,818,858); 3534951); LEADING THE WORLD TO SKIN HEALTH® (U.S. Trademark Registration No. 4,964,903); GSR® (U.S. Trademark Registration No. 5,719,962); GETTING SKIN READY® (U.S. Trademark Registration No. 5,719,959); DAILY POWER DEFENSE® (U.S. Trademark Registration No. 7,025,907); COMPLEX A+® (U.S. Trademark Registration No. 7,322,622); BRIGHTALIVE® (U.S. Trademark Registration No. 4,717,107); ℤ® (U.S. Trademark Registration No. 3,443,711) and ℧® (U.S. Trademark Registration No. 5,252,365) (collectively, the "ZO Trademarks").

16.   The registration for each of the ZO Trademarks is valid, subsisting and in full force and effect.

17.   ZO actively uses and markets all the ZO Trademarks in commerce.

18.   Due to the quality and exclusive distribution of ZO's products, and because ZO is uniquely recognized as the source of high-quality products, the ZO Trademarks have enormous value.

**ZO Permits Only Select Physicians to Sell ZO Products, Prohibits Unapproved Sales Online, and Exercises Quality Controls Over the Distribution of ZO Products**

19.   ZO also maintains its quality controls by limiting the third-party sale of its products to select medical practitioners who are vetted and authorized by ZO to sell ZO products ("Authorized Accounts").  ZO requires that each of its Authorized Accounts be a medical practitioner and agree to and submit certain documentation confirming their licensure as a medical practitioner.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

20.    Authorized Accounts must enter into contracts with ZO to be permitted to sell ZO products.  These contracts allow Authorized Accounts to sell ZO products only in certain channels and require Authorized Accounts to provide various services and exercise various quality controls over ZO products (collectively, the "ZO Terms").

21.    To maintain quality control over ZO products, ZO allows ZO products to be sold in the United States only by ZO itself or by Authorized Accounts.

22.    Due to the professional grade of its products, the ZO Terms require that Authorized Accounts follows strict quality controls over the production and distribution of ZO products.

23.    To become authorized to sell ZO products, Authorized Accounts are permitted to sell ZO products solely and directly to their practice's end-user patients and customers from their approved practice location.

24.    Under the ZO Terms, Authorized Accounts also agree to provide close consultation about ZO products to end-users and to maintain knowledge about ZO products and the products' potential benefits and risks.  This person-to-person interaction between Authorized Accounts and their consumers allows for explanation and guidance on the safe and proper use of ZO products.

25.    Unauthorized resellers of ZO products are not trained in or capable of providing the specific medical expertise for ZO products that ZO requires of its Authorized Accounts.

26.    Additionally, under the ZO Terms, Authorized Accounts are prohibited from transferring ZO products to any non-approved location.

27.    Under the ZO Terms, Authorized Accounts are prohibited from selling ZO products to persons or entities that Authorized Accounts know, or have reason to know, are going to resell those products anywhere, including on the Internet.

28.    Under the ZO Terms, to maintain the quality of ZO products, Authorized Accounts may only purchase ZO products for resale directly from ZO.

7

29.    The ZO Terms permit ZO to request that Authorized Accounts submit to ZO records and other information regarding ZO products for review and auditing, and require Authorized Accounts to notify ZO of any damaged ZO products.

30.    ZO also imposes heightened quality control measures that apply specifically to Authorized Accounts approved by ZO to sell online ("Internet Accounts").

31.    These quality controls include a requirement that Internet Accounts sell online only through account-owned websites that ZO has approved.

32.    The ZO Terms also prohibit sales of ZO products by Authorized Accounts through any websites not authorized by ZO.

33.    Internet Accounts must certify that they are a medical professional or physician in good standing and operate a practice at a physical street address with a landline telephone number where customers can reach them for support.

34.    Internet Accounts must also maintain qualified personnel with knowledge of the specifications, features, and use of ZO products and provide quality post-sale customer service.

35.    ZO's quality control requirements are designed to ensure that customers receive products and accompanying customer service of only the highest quality and safety.

36.    Authorized Accounts must agree to the ZO Terms, and the ZO Terms permit ZO to terminate an Authorized Account that does not comply with the Terms.

37.    ZO's quality control and customer service requirements are legitimate and substantial.  As a result of Defendants' sales of products that are not subject to these requirements, ZO has lost control of the quality of goods that bear its trademarks.

38.    Additionally, ZO also provides customers who purchase ZO products from Authorized Accounts with a Limited Warranty that allows Authorized

8

Accounts to provide customers with a credit or replacement product under certain circumstances. ZO does not provide this Limited Warranty for products that are sold in violation of ZO's contracts with Authorized Accounts and outside of ZO's quality controls, shipping, and delivery systems.

**ZO's Discovery of Defendants' Unauthorized Sales of ZO Products and Sales of Products Bearing Counterfeit Reproductions of the ZO Trademarks on the Internet**

39.    Because the unauthorized sale of ZO products over the Internet threatens the safety of consumers and the reputation and goodwill associated with the ZO Trademarks, ZO actively monitors its Authorized Accounts' sales and the sale of ZO products online.

40.    Through its investigation, ZO discovered high volumes of products bearing the ZO Trademarks and counterfeit reproductions of the ZO Trademarks being sold on the Infringing Websites.

41.    The Wholesale Website displays a notice, shown below, directing consumers to the Consumer Website:

If you are looking to shop for personal use please visit www.skincareessentials.com. This site is strictly used for businesses purchasing wholesale. To access our product prices, you must be an approved business.

42.    On or about September 9, 2024, ZO, through counsel, sent a cease-and-desist letter to the operators of the Infringing Websites at the Holt Drive Address. The letter explained, among other things, that the operators were infringing the ZO Trademarks through their online sales and causing harm to ZO. ZO's letter also explained that Authorized Accounts are not permitted to sell ZO products online or sell ZO products to resellers. ZO's letter demanded that Defendants permanently cease selling products bearing the ZO trademarks and disclose all sources that provided Defendants with the products they had listed for sale.

9

43. Defendants did not respond to ZO's September 9 letter or otherwise contact ZO.

44. On or about July 1, 2025, ZO, through counsel, sent another letter with a draft of this complaint attached to Defendants, reiterating and referencing the demands in the first letter.

45. Defendants did not respond to ZO's July 1 letter or otherwise contact ZO.

46. As of the time of filing, Defendants have not responded to ZO's letters and have continued to advertise and sell products bearing the ZO Trademarks and counterfeit reproductions of the ZO Trademarks through their Infringing Websites without abatement. Defendants' disregard of ZO's letters and their continued sales of non-genuine and counterfeit products demonstrate that Defendants are acting intentionally, willfully, and maliciously.

47. Upon information and belief, through their Infringing Websites, Defendants accept and fulfill orders from California residents for products bearing the ZO Trademarks and counterfeit reproductions of the ZO Trademarks and cause substantial quantities of infringing products to be shipped to persons located in California through the regular course of business. Defendants have taken no steps to prevent persons located in California from purchasing products from any of the Infringing Websites.

**Defendants Are Infringing the ZO Trademarks By Selling Products Bearing The ZO Trademarks**

48. Defendants are not practicing physicians, do not operate a ZO-approved location, and ZO has never authorized or otherwise granted Defendants permission to sell ZO products.

49. Defendants, without authorization from ZO, have sold—and continue to sell—products bearing the ZO Trademarks through the Infringing Websites. Defendants may also be selling products through storefronts on Amazon, Walmart,

eBay, or other channels that ZO has not yet discovered, and cannot discover until it is able to take discovery.

50.    Defendants are not trained about ZO products and cannot and do not maintain knowledge and expertise about ZO products and do not provide close consultation and person-to-person interaction with consumers about the safe and proper use of ZO products.

51.    Defendants did not purchase the ZO products they resell directly from ZO.

52.    ZO is not able to request and review records and information from Defendants about the ZO products they resell and, therefore, cannot ensure that Defendants are abiding by the ZO Terms or ensure the quality of the products sold by Defendants.

53.    Additionally, ZO has not approved Defendants or anyone else to sell ZO products through the Infringing Websites.

54.    The Infringing Websites do not certify that they are operated by medical professionals or physicians in good standing and do not identify a practice they operate at a physical street address.

55.    Defendants do not participate in training or maintain qualified personnel with knowledge of the specifications, features, and use of ZO products or provide post-sale customer service, as required by ZO for all Authorized Accounts, including Internet Accounts.

56.    ZO has implemented quality control and customer service requirements throughout their authorized channels of distribution.  The products sold by Defendants are not genuine ZO products because they are not subject to, and interfere with, ZO's quality control and customer service requirements that Authorized Accounts must follow.

57.    A significant reason why ZO only allows ZO products to be sold only by ZO itself or Authorized Accounts who are subject to ZO's quality controls is to

prevent consumers from suffering experiences like those described in the negative reviews posted by consumers on Defendants' Infringing Websites, as alleged below.

58.     By offering products bearing the ZO Trademarks to consumers without the knowledge and expertise required of ZO's Authorized Accounts, the products Defendants sell bearing the ZO Trademarks are materially different from the genuine ZO products sold by Authorized Accounts.

59.     Further, because the products sold by Defendants are not subject to, do not abide by, and interfere with ZO's quality controls, the products Defendants sell bearing the ZO Trademarks are materially different from genuine ZO products sold by Authorized Accounts that come with these quality controls.

60.     Moreover, Defendants' actions endanger the health and safety of consumers who purchase products bearing the ZO Trademarks from Defendants because consumers may misuse the products.

61.     For all these reasons, the products being sold by Defendants are not genuine ZO products and falsely mislead consumers to believe they are purchasing new and genuine ZO products.

**Defendants are Infringing the ZO Trademarks by Selling Counterfeit ZO Products**

62.     In March 2025, ZO conducted test purchases of ZO products from Defendants' Consumer Website and discovered that Defendants are also selling products bearing counterfeit reproductions of the ZO Trademarks.

63.     ZO applies unique identifying numerical lot codes to each of its products.

64.     ZO reviewed each of these test purchases and determined that they contain lot codes that do not exist on authentic ZO products—i.e., fake lot codes.

65.     Although each of the test purchases appear at casual glance to be products manufactured by ZO, upon closer inspection, the ingredients, texture and scent of the products, as well as the packaging, product design, and lot codes on

each of the products, confirmed that they were not sold, manufactured, or authorized by ZO.

66.    The counterfeit products that ZO purchased from the Consumer Website were different from authentic ZO products in various ways, including that they contain fake lot codes, contain differences in the product packaging, product labels, and the texture and scent of the products themselves, contain chemical compounds not used in authentic ZO products, and lack key compounds that are essential to ZO's approved formulation.

67.    Defendants have knowingly and intentionally sold ZO products through their Infringing Websites bearing counterfeit reproductions of the ZO Trademarks that are identical to or substantially indistinguishable from authentic ZO products.

68.    The ZO products that Defendants' counterfeit products are mimicking are intended to be applied to the skin by consumers.  As a result of Defendants' actions, consumers are applying to their skin counterfeit products with unknown compositions when they believe they are using authentic ZO products.

69.    Defendants' sales of the counterfeit products, offers to sell the counterfeit products, and misrepresentations and infringement of the ZO Trademarks are damaging to the public and to ZO.

70.    Defendants, upon information and belief, are actively using, promoting, and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of counterfeit products with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by ZO and its Authorized Accounts despite Defendants' knowledge that they are without authority to use the ZO Trademarks or, obviously, counterfeit reproductions of the ZO Trademarks.  Defendants' actions are creating a likelihood of confusion at the time of initial interest and in the post-sale setting because consumers believe Defendants' counterfeit products are authentic goods originating from, associated with, or approved by ZO when they are not.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

71.    Consumers have written reviews on Defendants' Infringing Websites in which they complained of receiving products that were counterfeit or bore the hallmarks of counterfeit products, like the test purchases ZO conducted, or products that were of otherwise poor quality, a small sample of which are shown below.

72.    For example, consumers have posted the following negative reviews on Defendants' Consumer Website, www.skincareessentials.com:

**Terrible**

I wish I could give this zero stars. I've been a ZO customer for almost three years using daily power defense every single day and decided to try this site to get it cheaper - guys I promise you this is NOT ZO. My skin is completely wrecked, I'm so bummed and mad at myself for believing this is legit. Please please please don't waste your time or money. The mug picture was without makeup before I tried this crap.

★☆☆☆☆                                                          01/19/25

  Maria  Verified

**Fake fake**

This is a fake I used zo skin like 3 years and always had great results but after this one I got all over my face comedones, and you can check it by yourself. Just try to rub the name and it's come off really easily which is not supposed to be like that and I had old original bottle that I bought from my cosmetologist and it's like a year old and name not tubing that easily

COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

 

★☆☆☆☆                                    02/22/25

Taylor H. **Verified**

### Fake or incredibly old product

I use this scrub regularly but have never ordered from
Skincare Essentials. I was out and they had a sale so I
thought I would try. Immediately upon using my product,
I realized something was off. It did not emulsify the way it
normally does, had no grit to exfoliate and had a weird
perfume smell…the real polish has a very distinct
refreshing smell, not perfume.
I tried to use it once and it felt like I was rubbing dish
soap on my face. I then went to the ZO store to buy a
replacement and compared the two products and was
indeed correct that it is more than likely fake or like 2+
years old.

 

★☆☆☆☆                                    03/16/25

Megan R. **Verified**

### Not the real thing

I had planned to purchase from ZO when I ran out, but a
sale got the better of me. This is not the real thing - it
feels like I'm rubbing a thick balm over my skin. There is
no polish.

  

### Fake

This is not the real deal. I've used ZO daily for a long
time. Thought I'd order here as they were having a sale.
Big mistake! The texture was different, this had a scent to
it, my skin started feeling scratching off and
totally different stuff inside. What a shame! I've asked for
bottles. Skin cares bottle lettering scratching off and
totally different stuff inside. What a shame! I've asked for
a refund. What a pain in the butt. If it's too good to be
true….the real bottle is on the left.

15



73.    Additionally, consumers have posted the following negative reviews on Defendants' Wholesale Website, www.plentifulskin.com:







COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

74.   Despite the numerous reviews submitted by consumers notifying Defendants that products offered on their Website were counterfeit, Defendants have continued to sell counterfeit products.

**Defendants are Engaging in False Advertising by Falsely Stating that They are Authorized Sellers of ZO Products**

75.   As of the date of filing this Complaint, on the Wholesale Website, Defendants falsely state that they are authorized retailers of ZO products, as shown below:

76.    Defendants' misrepresentation that they are an "authorized retailer" of ZO products is false because none of Defendants are Authorized Accounts with ZO.

77.    As of the date of filing this Complaint, on the Consumer Website, Defendants falsely state that they sell only authentic products:



78.    Defendants' misrepresentation that they sell "authentic" ZO products is false because, as alleged, Defendants sell counterfeit, inauthentic versions of ZO products.

79.    Defendants' misrepresentations that they are authorized retailers of ZO products and sell only authentic ZO products are material because whether a seller is authorized and whether products are authentic are material components of a consumer's purchasing decision.  Because skincare products are topically applied, consumers are more likely to purchase ZO products from sellers who are authorized to sell them and required to abide by ZO's quality controls and customer service requirements, and are significantly more likely, if not certain, to purchase only authentic products.

80.    Defendants' misrepresentations are likely to, and do, create consumer confusion because customers who purchase ZO products from Defendants believe they are purchasing authentic products from Authorized Accounts when, in fact, they are not.

18

COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

81.    Defendants have known since September 9, 2024, at the latest, when they received the cease-and-desist letter, that they are not authorized to sell ZO products and have been falsely advertising the products they sell.

**Defendants Are Intentionally Interfering with ZO's Contracts and Business Relationships with Authorized Accounts**

82.    As noted above, ZO sells ZO products to U.S. consumers exclusively through ZO itself and through Authorized Accounts.

83.    ZO has entered into contracts with all of its Authorized Accounts that prohibit Authorized Accounts from selling ZO products to persons or entities that Authorized Accounts know, or have reason to know, are going to resell the products on the Internet.

84.    ZO's contracts with its Authorized Accounts also prohibit Authorized Accounts from transferring ZO products to any non-ZO-approved location.

85.    Defendants have sold and are continuing to sell a high volume of products bearing the ZO Trademarks on the Internet.  Defendants did not purchase the ZO products they resell directly from ZO.  Thus, Defendants have purchased products from at least one Authorized Account for the purpose of reselling them on the Internet.

86.    Defendants have known of this prohibition, among other reasons, because Defendants received a cease-and-desist letter on or around September 9, 2024 that discussed them.

87.    Despite having knowledge of these prohibitions, Defendants intentionally, knowingly, and willfully interfered with ZO's contracts with its Authorized Accounts by inducing Authorized Accounts to breach their contracts and sell ZO products to Defendants that Defendants resold on their Infringing Websites.

88.    In interfering with ZO's contracts, Defendants acted without justification and with a wrongful purpose.  Defendants purchased ZO products from Authorized Accounts—and in so doing, instigated a breach of the Authorized

19

Accounts' contracts with ZO—so that Defendants could unlawfully infringe upon and materially damage the value of the ZO Trademarks by reselling the products on the Internet, thereby committing an independent tort.

89.    Defendants are not parties to the contracts that Defendants caused Authorized Accounts to breach.

**ZO Has Experienced Significant Harm as a Result of Defendants' Conduct**

90.    As set forth above, the unauthorized sale of products bearing the ZO Trademarks and counterfeit reproductions of the ZO Trademarks by unauthorized sellers such as Defendants has caused significant harm to the ZO brand.

91.    When a consumer receives a counterfeit, non-genuine, damaged, or otherwise poor-quality or materially different product from an unauthorized seller, such as Defendants, the consumer associates that negative experience with ZO.  As such, Defendants' ongoing sale of non-genuine and counterfeit products bearing the ZO Trademarks harms the ZO brand.

92.    As a proximate result of Defendants' actions, ZO has suffered, and will continue to suffer, significant monetary harm including, but not limited to, loss of sales, damage to the value of its intellectual property, harm to the goodwill associated with the ZO brand, and damage to its existing and potential contracts and business relations.

93.    ZO is entitled to injunctive relief because Defendants will otherwise continue to unlawfully interfere with ZO's contracts with Authorized Accounts. Additionally, ZO is entitled to injunctive relief because Defendants will otherwise continue to unlawfully sell products bearing the ZO Trademarks that are materially different from genuine ZO products sold by Authorized Accounts, and will continue to unlawfully sell products bearing counterfeit reproductions of the ZO Trademarks. Defendants' ongoing illegal conduct has caused and will continue to cause irreparable harm to ZO's reputation, goodwill, business relationships, intellectual property, and brand integrity.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

94.    Additionally, ZO is entitled to injunctive relief requiring Defendants to return or destroy infringing products because, without that remedy, Defendants may evade injunctive relief by transferring their infringing products to another reseller.

95.    Defendants' conduct was and is knowing, intentional, willful, malicious, wanton, and contrary to law.

## COUNT I

### Trademark Counterfeiting

### 15 U.S.C. § 1114

96.    ZO hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

97.    ZO is the owner of the ZO Trademarks.

98.    The ZO Trademarks are registered with the United States Patent and Trademark Office.

99.    The ZO Trademarks are valid and subsisting and in full force and effect.

100.    Defendants willfully and knowingly used in commerce, and continue to use, counterfeit reproductions of the ZO Trademarks that are identical to, or substantially indistinguishable from, the ZO Trademarks on goods covered by ZO's federal trademark registrations.

101.    Defendants have intentionally used these spurious designations, knowing that they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods.

102.    The products bearing counterfeit reproductions of the ZO Trademarks that Defendants sell are different from authentic ZO products in various ways, including that the counterfeit products have fake lot codes, contain differences in the product packaging, product labels, and the texture and scent of the products themselves, contain chemical compounds not used in authentic ZO products, and lack key compounds that are essential to ZO's approved formulation.

103.   Defendants' use of the ZO Trademarks to advertise, promote, offer for sale, distribute, and sell products bearing counterfeit trademarks was at all times and is currently without ZO's authorization, license, or consent.

104.   Defendants' unauthorized use of the ZO Trademarks on goods bearing counterfeit trademarks in connection with their advertisement, promotion, sale, offering for sale, and distribution of goods on the Internet constitutes use of the ZO Trademarks in commerce.

105.   Defendants' unauthorized use of the ZO Trademarks is likely to: (a) cause confusion, mistake, and deception; (b) cause the public to incorrectly believe that Defendants' goods are the same as authentic ZO products and/or that the products sold by Defendants are affiliated with, connected to, associated with, or in some way related to ZO; (c) result in Defendants benefiting from ZO's advertising and promotion; and (d) result in Defendants unfairly profiting from ZO's reputation and trademarks, all to the substantial and irreparable injury of the public, ZO, the ZO Trademarks, and the substantial goodwill they represent.

106.   Based on ZO's longstanding and continuous use of its ZO Trademarks in United States commerce, as well as the federal registrations of the ZO Trademarks, Defendants had actual and constructive knowledge of ZO's superior rights in and to the ZO Trademarks when Defendants began using spurious designations identical to the ZO Trademarks as part of their efforts to deceive customers and the general public.

107.   On information and belief, Defendants adopted and used the ZO Trademarks in furtherance of Defendants' willful and deliberate scheme of trading upon the extensive customer goodwill, reputation, fame, and commercial success of products that ZO offers under the ZO Trademarks.

108.   Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

109.   As a proximate result of Defendants' actions, ZO has suffered, and will

continue to suffer, immediate and irreparable harm. ZO has also suffered, and continues to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

110. By reason of the foregoing, Defendants are liable to ZO for: (a) statutory damages of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at ZO's election, an amount representing three times ZO's damages and/or Defendants' illicit profits garnered from Defendants' counterfeiting; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

111. ZO is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' counterfeiting and, unless Defendants are permanently enjoined, ZO will suffer irreparable harm.

112. ZO is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants have willfully, intentionally, maliciously, and in bad faith engaged in trademark counterfeiting of the ZO Trademarks.

## COUNT II

### Trademark Infringement

### 15 U.S.C. § 1114 and 1125(a)(1)(A)

113. ZO hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

114. ZO is the owner of the ZO Trademarks.

115. The ZO Trademarks are registered with the United States Patent and Trademark Office.

116. The ZO Trademarks are valid and subsisting and in full force and effect.

117. Defendants willfully and knowingly used the ZO Trademarks in commerce by selling products bearing the ZO Trademarks on the Internet without the consent of ZO.

118.   The products bearing the ZO Trademarks that Defendants sell are not authorized for sale by ZO.

119.   Defendants' use of the ZO Trademarks in connection with the unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are the same as genuine products legitimately bearing the ZO Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected to ZO.

120.   Defendants' use of the ZO Trademarks in connection with the unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic ZO products.

121.   The products sold by Defendants are not, in fact, genuine and authentic ZO products.  The products sold by Defendants are materially different because, among other reasons, they are not subject to, do not abide by, and interfere with ZO's quality control requirements that Authorized Accounts must follow, do not come with the knowledge and expertise required of Authorized Accounts, and do not come with the Limited Warranty.

122.   Defendants' unauthorized use of the ZO Trademarks has materially damaged the value of the ZO Trademarks, caused significant damage to ZO's business relations, and infringed on the ZO Trademarks.

123.   As a proximate result of Defendants' actions, ZO has suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

124.   ZO is entitled to recover their damages caused by Defendants' infringement of the ZO Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

125.   ZO is entitled to injunctive relief under 15 U.S.C. § 1116 because it has

no adequate remedy at law for Defendants' infringement, and unless Defendants are permanently enjoined, ZO will suffer irreparable harm.

126.   ZO is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the ZO Trademarks.

## COUNT III

### False Advertising

### 15 U.S.C. § 1125(a)(1)(B)

127.   ZO hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

128.   ZO is the owner of the ZO Trademarks.

129.   The ZO Trademarks are registered with the United States Patent and Trademark Office.

130.   The ZO Trademarks are valid and subsisting trademarks in full force and effect.

131.   Through their Infringing Websites, Defendants willfully and knowingly used, and continue to use, the ZO Trademarks in commerce for the purpose of advertising, promoting, and selling ZO products without ZO's consent.

132.   In connection with their sale of ZO products without ZO's consent, Defendants make false and misleading statements that they are authorized to sell ZO products and that the products they sell are "absolutely authentic."

133.   Defendants' false and misleading statements have been disseminated to the relevant purchasing public.

134.   Defendants falsely advertise the products they sell, including, but not limited to, falsely advertising that Defendants are authorized to sell ZO products and the ZO products they sell are "authentic."

135.   As of the date of filing this Complaint, Defendants continue to advertise and sell ZO products and counterfeit ZO products without authorization

from ZO, and continue to misrepresent that they are Authorized Accounts of ZO products.

136.  Defendants' representation that they are "authorized retailer[s]" of ZO products is false because none of Defendants are currently Authorized Accounts of ZO products.

137.  Defendants' representation that they sell only "authentic" ZO products is false because, as alleged, Defendants are selling counterfeit, inauthentic versions of ZO products.

138.  Defendants have never been Authorized Accounts of ZO products.

139.  Defendants have known since September 9, 2024, at the latest, when Defendants' received ZO's cease-and-desist letter, that they have been falsely advertising the products they sell.

140.  Defendants' misrepresentations that they are authorized retailers of ZO products and sell only "authentic" products are likely to deceive a substantial portion of Defendants' intended audience—customers who purchase products online—because, at minimum, Defendants boast themselves as being authorized retails of skincare products in an effort to attract consumers, and make the misrepresentations conspicuously on the Infringing Websites.

141.  Defendants' misrepresentations that they are "authorized retailers" and sell only "authentic" products are material because whether a seller is authorized and selling authentic products are material components of a consumer's purchasing decision.  Because skincare products are topically applied, consumers are more likely to purchase ZO products from sellers who are authorized to sell them and required to abide by ZO's quality controls and customer service requirements, and are significantly more likely, if not certain, to purchase only authentic products.

142.  Defendants' misrepresentations are likely to cause ZO to lose sales in part because Defendants' sale of poor-quality and counterfeit products and provision of poor customer service harms ZO's reputation and customer goodwill.

143.   Defendants' misrepresentations are also likely to cause ZO to lose sales because consumers will be influenced to buy ZO products from Defendants instead of ZO's Authorized Accounts.

144.   As a proximate result of Defendants' actions, ZO has suffered, and will continue to suffer, damages to its business, goodwill, reputation, and profits in an amount to be proven at trial.

145.   ZO is entitled to recover its damages caused by Defendants' false advertising and disgorge Defendants' profits from their sales garnered from their willfully false statements and unjust enrichment.

146.   ZO is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' actions and, unless Defendants are permanently enjoined, ZO will suffer irreparable harm.

147.   ZO is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith engaged in false advertising.

## COUNT IV

### Unfair Competition

### 15 U.S.C. § 1125(a)

148.   ZO hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

149.   ZO is the owner of the ZO Trademarks.

150.   The ZO Trademarks are registered with the United States Patent and Trademark Office.

151.   The ZO Trademarks are valid and subsisting trademarks in full force and effect.

152.   Defendants willfully and knowingly used the ZO Trademarks in commerce by selling products bearing the ZO Trademarks on the Internet without the consent of ZO.

27

153.   The products bearing the ZO Trademarks that Defendants sell are not authorized for sale by ZO.

154.   Defendants' use of the ZO Trademarks in connection with the unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are the same as genuine products legitimately bearing the ZO Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected to ZO.

155.   Defendants' use of the ZO Trademarks in connection with the unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic ZO products.

156.   The products sold by Defendants are not, in fact, genuine and authentic ZO products.  The products sold by Defendants are materially different because, among other reasons, they are not subject to, do not abide by, and interfere with ZO's quality control requirements that Authorized Accounts must follow, do not come with the knowledge and expertise required of Authorized Accounts, and do not come with the Limited Warranty.

157.   Defendants also willfully and knowingly used in commerce, and continue to use, counterfeit reproductions of the ZO Trademarks.

158.   Defendants have intentionally used these spurious designations, knowing that they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods.

159.   Defendants' use of the ZO Trademarks to advertise, promote, offer for sale, distribute, and sell products bearing counterfeit trademarks was at all times and is currently without ZO's authorization, license, or consent.   Defendants' unauthorized use of the ZO Trademarks on good bearing counterfeit trademarks in connection with their advertisement, promotion, sale, offering for sale, and

distribution of goods on the Internet constitutes use of the ZO Trademarks in commerce.

160.    Defendants' unauthorized use of the ZO Trademarks is likely to cause confusion, mistake, and deception and cause the publicly to incorrectly believe that Defendants' goods are the same as authentic ZO products and/or that the products sold by Defendants are affiliated with, connected to, associated with, or in some way related to ZO.

161.    Defendants' unauthorized use of the ZO Trademarks has materially damaged the value of the ZO Trademarks, caused significant damage to ZO's business relations, and infringed on the ZO Trademarks.

162.    As a proximate result of Defendants' actions, ZO has suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

163.    ZO is entitled to recover their damages caused by Defendants' infringement of the ZO Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

164.    ZO is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement, and unless Defendants are permanently enjoined, ZO will suffer irreparable harm.

165.    ZO is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the ZO Trademarks.

## COUNT V

### Unfair and Deceptive Business Practices

### Cal. Bus. & Prof. Code §§ 17200, *et seq*.

166.    ZO hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

167.    Defendants willfully and knowingly used, and continue to use, the ZO

Trademarks and counterfeit reproductions of the ZO Trademarks in interstate commerce for the purpose of advertising, marketing, and selling products bearing the ZO Trademarks and counterfeit reproductions of the ZO Trademarks without the consent of ZO.

168. The products Defendants sell are not genuine ZO products because the products are not authorized for sale by ZO, are not subject to ZO's quality controls, and do not come with the product knowledge or expertise required of genuine ZO products.

169. Defendants' unauthorized sale of products bearing the ZO Trademarks interferes with ZO's ability to exercise quality controls over products bearing the ZO Trademarks because Defendants have not received the specialized knowledge and expertise required of Authorized Accounts.

170. The products Defendants sell are materially different from genuine ZO products because they are not subject to, and interfere with, ZO's quality controls.

171. Defendants' use of the ZO Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the ZO Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products are subject to ZO's quality control requirements when they are not.

172. The products Defendants sell are not authentic ZO products because they are counterfeit versions of ZO products, as evidenced by, among other things, the use of fake lot codes on the products.

173. Defendants' use of counterfeit reproductions of the ZO Trademarks in connection with the unauthorized advertising, promotion, and sale of inauthentic products misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products are authentic ZO products when they are not.

174. Defendants' use of the ZO Trademarks and counterfeit reproductions of

the ZO Trademarks in connection with the unauthorized advertising, promotion, and sale of products is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine and authentic ZO products when they are not.

175. Defendants' use of the ZO Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the ZO Trademarks and counterfeit reproductions of the ZO Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with ZO when they are not.

176. Defendants' unauthorized and deceptive use of the ZO's Trademarks and counterfeit reproductions of the ZO Trademarks is material and likely to influence consumers to purchase the products it sells, as consumers are likely to believe that the products Defendants advertise using the ZO Trademarks are genuine and authentic ZO products that are subject to ZO's quality controls when they are not.

177. Defendants have also knowingly and willfully obtained ZO products through unlawful means and in violation of ZO's agreements with its Authorized Accounts. Specifically, Defendants have continued to acquire ZO products through ZO's Authorized Accounts for purposes of reselling those products on the Internet despite knowing that ZO's agreements with its Authorized Accounts prohibit them from selling products to third parties for purposes of resale.

178. Defendants' actions constitute unfair, deceptive, untrue, and/or misleading advertising in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

179. Defendants' actions constitute unlawful, unfair, and/or fraudulent business acts or practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

180. As a result of Defendants' unlawful actions, ZO has suffered, and continues to suffer, irreparable harm. ZO has also suffered, and continues to suffer,

COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

181.   ZO is entitled to injunctive relief under Cal. Bus. & Prof. Code § 17203 because it has no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, ZO will suffer irreparable harm.

## COUNT VI

### Intentional Interference With Contractual Relations

182.   ZO hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

183.   This claim arises under the laws of the State of California.

184.   ZO has contracts and business relationships with its Authorized Accounts, who sell ZO products.  These contracts prohibit Authorized Accounts from selling ZO products to third parties, such as Defendants, who are not Authorized Accounts and who intend to resell the products.

185.   Defendants know of ZO's contracts with its Authorized Accounts who sell ZO products.

186.   Defendants are not Authorized Accounts of ZO products.

187.   Defendants have sold—and continue to sell—products bearing the ZO Trademarks through their Infringing Websites.

188.   Defendants did not purchase the ZO products they resell directly from ZO.

189.   Defendants have purchased ZO products from one or more Authorized Accounts.

190.   Based on these facts, it is plausible and a reasonable inference that Defendants acquired the products they are selling from one or more of ZO's Authorized Accounts.

191.   Defendants purchased products from Authorized Accounts for the purpose of reselling them on the Internet, which prevented performance of at least

COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

1  one or more of the contracts.

2      192.  Defendants have known that ZO's contracts prohibit Authorized

3  Accounts from selling ZO products to third parties, such as Defendants, who the

4  Authorized Account knows or has reason to now is going to resell the products on

5  the Internet.

6      193.  Defendants have known of this prohibition, among other reasons,

7  because Defendants received a cease-and-desist letter from ZO on or around

8  September 9, 2024 that discussed this prohibition.

9      194.  Defendants, despite having knowledge of this prohibition and without

10  legal right, privilege, or justification, have intentionally, knowingly, and willfully

11  interfered with the contracts between ZO and its Authorized Accounts, or knew that

12  disruption of one or more of the contracts was certain or substantially certain to

13  occur as a result of their conduct.

14      195.  Defendants' actions have caused or were a substantial factor in causing

15  ZO to suffer, and continue to suffer, substantial harm, including loss of sales and

16  damage to ZO's existing and potential business relations with one or more of ZO's

17  Authorized Accounts, in an amount to be proven at trial, and Defendants' actions

18  were a substantial factor in causing ZO's harm.

19  **PRAYER FOR RELIEF**

20      WHEREFORE, ZO prays for relief and judgment as follows:

21      A.    Judgment in favor of ZO and against Defendants in an amount to be

22  determined at trial including, but not limited to, compensatory damages,

23  disgorgement of profits, accounting of profits, statutory damages, treble damages,

24  punitive damages, and pre-judgment and post-judgment interest, as permitted by

25  law;

26      B.    Preliminary and permanent injunctions that issue enjoining Defendants

27  and any employees, agents, servants, officers, representatives, directors, attorneys,

28  successors, affiliates, assigns, any and all other entities owned or controlled by

Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

       i)     Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products bearing the ZO Trademarks and counterfeit reproductions of the ZO Trademarks;

      ii)    Prohibiting the Enjoined Parties from using any of the ZO Trademarks and counterfeit reproductions of the ZO Trademarks in any manner, including advertising on the Internet;

     iii)   Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all ZO products as well as any products bearing the ZO Trademarks and counterfeit reproductions of the ZO Trademarks;

     iv)   Prohibiting he Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the ZO Trademarks and counterfeit reproductions of the ZO Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

     v)    Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of ZO's products, or any of the ZO Trademarks and counterfeit reproductions of the ZO Trademarks;

     vi)   Requiring the Enjoined Parties to take all action, including but

34

1    not limited to, requesting removal from the Internet search
2    engines (such as Google, Yahoo!, and Bing), to remove from the
3    Internet any of the ZO Trademarks and counterfeit reproductions
4    of the ZO Trademarks which associate ZO's products or the ZO
5    Trademarks and counterfeit reproductions of the ZO Trademarks
6    with the Enjoined Parties or the Enjoined Parties' websites;

7    vii)    Requiring the Enjoined Parties to take all action to remove the
8    ZO Trademarks and counterfeit reproductions of the ZO
9    Trademarks from the Internet, including from the websites
10   www.skincareessentials.com and www.plentifulskin.com;  and

11   viii)   Requiring the Enjoined Parties to take all action to remove, or
12   cause to be removed, any consumer reviews of products bearing
13   ZO's trademarks and counterfeit reproductions of the ZO
14   Trademarks that were sold by Defendants on third-party
15   marketplace websites including but not limited to on
16   www.skincareessentials.com and www.plentifulskin.com.

17   C.    An award of attorneys' fees, costs, and expenses.

18   D.    Such other and further relief as the Court deems just, equitable and
19   proper.

20   **JURY DEMAND**

21   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ZO demands a
22   trial by jury on all issues so triable.

23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

35

COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

Dated: July 15, 2025

Respectfully submitted,

*/s/ Jeahyun Ahn*
Jeahyun Ahn (SBN 357990)
jahn@vorys.com
Adam C. Sherman (SBN 224979)
acsherman@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
2211 Michelson Drive, Suite 500
Irvine, California 92612
Telephone: (949) 531-4492
Facsimile: (949) 531-4492

*Of counsel:*
Martha Brewer Motley (*pro hac vice forthcoming*)
mbmotley@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
Telephone: (614) 464-5626
Facsimile: (614) 719-5080

Emma K. Morehart (*pro hac vice forthcoming*)
ekmorehart@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
301 East Fourth Street, Suite 3500
Cincinnati, Ohio 45202
Telephone: (513) 723-4036
Facsimile: (513) 723-4036

***Attorneys for Plaintiff***
***ZO Skin Health, Inc.***

COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF